666 A.2d 609

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
MICHAEL KRIEGER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 11, 1995—Decided November 8, 1995.

Before Judges PRESSLER, WEFING and ARIEL A. RODRÍGUEZ.

*Furman L. Templeton, Jr.,* argued the cause for appellant (*Michael Critchley,* attorney; *Mr. Templeton,* on the brief).

*Linda A. Rinaldi,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Ms. Rinaldi,* of counsel and on the letter brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Following a trial by jury, defendant Michael Krieger was acquitted of two charges of second-degree bribery, *N.J.S.A.* 2C:27–2, and two related charges of second-degree misconduct in office, *N.J.S.A.* 2C:30–2. He was, however, convicted of a fifth count of the indictment, which charged him with third-degree hindering the apprehension, prosecution, conviction or punishment of himself or his co-defendant, Luis Zafra, by tampering with a witness, contrary to *N.J.S.A.* 2C:29–3. He appeals, and we reverse.

The core of defendant's legal argument is that hindering the prosecution of another by witness tampering, as defined by section a. of *N.J.S.A.* 2C:29–3, is an entirely distinct crime from hindering the prosecution of oneself by witness tampering, as defined by section b. of the statute. He further asserts that the elements of witness tampering under these two sections are different. He contends, therefore, that it was error to join the two crimes in a single count of the indictment and to permit the jury to rest a finding of guilt on one or the other. We agree, concluding that the jury's verdict of guilt is fatally defective.

Only a brief reference to the facts is necessary in order to address the issues raised on this appeal. Defendant Krieger was the Zoning Official of the City of Newark from 1986 to 1994. During the critical time period, co-defendant Zafra was the sub-code official in the city's building department. The State Division of Criminal Justice undertook an investigation of Krieger because of allegations that he was soliciting and accepting bribes in connection with his official duties. The State obtained the cooper-

ation of Jim Bass, a Newark contractor who had had dealings with Krieger in the past. An undercover investigator, George Wright, posed as Bass's nephew and employee. The gravamen of the State's bribery and official misconduct charges against Krieger was his alleged solicitation of bribes from Bass and Wright for the approval of a development application submitted by Bass. The gravamen of the State's case against Zafra was that he had received a portion of the money paid to Krieger for issuance of the required approvals for the Bass project. These bribery and misconduct charges against Krieger and Zafra were severed for trial, and, as noted, the jury acquitted Krieger of these charges.

The only matter before us is the "hindering by witness tampering" count. The State's sole evidence in support of this charge was a telephone conversation between Wright and Krieger recorded by Wright. During the course of the conversation Krieger told Wright that he, Krieger, was in jeopardy and that Zafra had already been "locked up." Krieger then said to Wright, "you don't know nothing about what he's talking about." This is the balance of that allegedly incriminating conversation:

Krieger: You never did business.
Wright: Okay.
Krieger: You never gave him nothing.
Wright: Ah huh.
Krieger: You never asked him nothing.
Wright: Okay.
Krieger: I helped you but I'm an old friend of Jim Bass.
Wright: Right.
Krieger: I knew Jim Bass for 30 years.
Wright: Right, right.
Krieger: That's it, that's all you know about it.

The State concedes that this conversation, which constituted its sole proof of hindering, involved no force, intimidation, or deception.

The hindering count of the indictment reads in relevant part that on May 31, 1990, the date of his telephone conversation with Wright, Krieger

with the purpose to hinder the apprehension, prosecution, conviction or punishment of Luis Zafra or himself, did tamper with a witness who might aid in the lodging of a charge against the said Luis Zafra or Michael Krieger for the crimes of bribery and official misconduct. . . .

Defendant moved prior to trial for dismissal of this count on the ground that it failed to allege a single offense. The judge denied the motion, reasoning that the State was entitled to pursue different theories of the crime at trial. The viability of this count was later raised at trial during the court's review of the proposed verdict sheet with counsel. The trial judge, recognizing that two separate crimes had been charged, offered, at defendant's option, to separate them out on the verdict sheet and to ask the jury for separate verdicts on the charge of hindering prosecution of another and the charge of hindering prosecution of oneself. Defense counsel declined the offer, making clear his concern that were the court to do so, defendant would be subject to conviction of two separate crimes on a single count of the indictment. Accordingly, the verdict sheet that went to the jury simply asked if defendant was guilty of "[h]indering prosecution of himself or another." The court's instructions to the jury were consistent with this wording. The court defined hindering the prosecution of oneself or of another or both by witness tampering as a single offense with a single set of elements which did not include the element of force, intimidation, or deception. The jury returned an affirmative answer to the single hindering question. There is no way of knowing if its answer was based on a finding that defendant hindered the prosecution of another, himself, or both.

In our view, the indictment, the verdict sheet, and the court's instructions were all fatally flawed because the crime of hindering one's own prosecution by means of witness tampering has different elements than the crime of hindering another's prosecution by witness tampering. In short, we are persuaded that the crime of hindering one's own prosecution by witness tampering requires the use of force, intimidation, or deception, and that so hindering the prosecution of another need not. We

see no other reasonable way to read *N.J.S.A.* 2C:29–3 as a whole in view of both its text and its apparent underlying policy.

*N.J.S.A.* 2C:29–3a provides that a "person commits an offense if, with purpose to hinder the apprehension, prosecution, conviction or punishment of another for an offense" he:

(3) Suppresses, by way of concealment or destruction, any evidence of the crime, or *tampers with a witness, informant, document or other source of information,* regardless of its admissibility in evidence, which might aid in the discovery or apprehension of such person or in the lodging of a charge against him... [Emphasis added.]

. . . . [or]

(5) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person or in the lodging of a charge against him. . . .

*N.J.S.A.* 2C:29–3b provides that a "person commits an offense, if with the purpose to hinder his own apprehension, prosecution, conviction or punishment," he:

(1) Suppresses, by way of concealment or destruction, any evidence of the crime or tampers with a document or other source of information, regardless of its admissibility in evidence, which might aid in his discovery or apprehension or in the lodging of a charge against him; or

 . . . . . . . .

(3) Prevents or obstructs by means of force, intimidation or deception any witness or informant from providing testimony or information, regardless of its admissibility, which might aid in his discovery or apprehension, or in the lodging of a charge against him. . . .

Section b. was not part of the original formulation of *N.J.S.A.* 2C:29–3 but was later added by *L.* 1981, *c.* 290, § 29. Thus, as a matter of drafting, when the Legislature enacted section b., it already had before it the correlatives of section a. It is immediately apparent that b(1) tracks a(3) verbatim with one single and critical exception—whereas a(3) prohibits tampering "with a witness, informant, document or other source of information," b(1) prohibits tampering only "with a document or other source of information." Witness and informant tampering in section b. is, rather, addressed by b(3), which, tracking a(5), adds the element of force, intimidation or deception. We think it plain, therefore, that the analogue of b(3) is a(5) and that by expressly providing

for witness tampering in b(3) alone the Legislature intended to exclude witness tampering from b(1).

The State's constructional argument relies on the use in b(1) of the phrase "tampers with a document or other source of information." It contends that "other source of information" should be read as including a witness. We point out again, however, that the analogous phrase in a(3) is "tampers with a witness, informant, document or other source of information." An "other source of information" in a(3) does not, therefore, include a witness or informant. There is no reason to construe differently that phrase as used in b(1). Obviously when the Legislature means to include a witness or informant, it knows how to say so and it says so directly. Moreover, we do not believe that the Legislature intended the anomaly of permitting a witness-tampering prosecution under b(3) if there is a use of force, deception or intimidation, and permitting prosecution under b(1) if there is not. This would make sense if there were different grading of crimes or other disparate consequences between a b(1) conviction and a b(3) conviction. But there are not.

We are also satisfied that there is sound policy reason for the Legislature's having chosen to treat witness tampering in hindering one's own prosecution differently from witness tampering in another's. It is surely a matter of common experience that people charged or expecting to be charged with crime will seek assistance from those who may have relevant knowledge. A mere request for investigational or testimonial assistance ought not to be criminalized on the basis that it might be construed as an effort to suppress evidence of a crime. Moreover, as noted by Cannel, *Criminal Code Annotated, Comment 3 N.J.S.* 2C:29-3, the "focus of the 1981 amending legislation was on organized crime, whose members are known to engage in this kind of activity to avoid conviction . . .", namely, violence against potential witnesses. We have no doubt, therefore, that the Legislature's addition in b(3) of force, intimidation or deception to the elements of witness tamper-

ing already defined by a(3) was a deliberate response to the threat of such violence.

The State concedes that if witness tampering under section b. requires force, intimidation or deception, this conviction cannot stand, not only because there was no instruction to the jury with respect to this element but also because there was no proof of this element. We agree. As we have noted, one cannot know whose prosecution the jury found this defendant to have hindered. We cannot speculate that it was Zafra's alone or defendant's alone or both. Were the same elements required irrespective of the identity of the intended beneficiary of defendant's hindering, it would hardly matter except for the technical issue of so-called duplicitous indictment counts. *See, e.g., State v. McDougald,* 120 *N.J.* 523, 563, 577 *A.*2d 419 (1990); *State v. Clark,* 255 *N.J.Super.* 14, 19–20, 604 *A.*2d 609 (App.Div.1992); *State v. Childs,* 242 *N.J.Super.* 121, 131–132, 576 *A.*2d 42 (App.Div.), *certif. denied,* 127 *N.J.* 321, 604 *A.*2d 596 (1990).

The problem here is much more fundamental since defendant may have been convicted of a crime despite a total lack of proof of one of its elements. That would have been the case if the jury had based its verdict on the finding that defendant had hindered his own prosecution by witness tampering despite the absence of the required element of force, intimidation or deception. It is, moreover, just as likely that that was its finding as was the alternative proposition, namely, the hindering of Zafra's prosecution. Thus, it was not merely alternative theories of a single crime that were pleaded in the hindering count. Alternative crimes with disparate elements were pleaded. Defendant's conviction cannot stand because there was insufficient evidence to support the conviction of one of the two alternative crimes, and we cannot know which of the two produced the guilty verdict. Defendant might have been entitled to a judgment of acquittal of which he was deprived by the duplicitous pleading.

We add this final observation. We cannot conclude that this fundamental objection to the hindering count was waived by

defense counsel's rejection of the court's offer to pose two separate questions to the jury. This is so because the missing element of force, intimidation, or deception, was, in any event, not present in the case. Hence, merely splitting the question would not have cured the defect, at least, in respect of hindering one's own prosecution in the absence of proof or instructions regarding force, intimidation, or deception. We are also satisfied that at that point in the prosecution, counsel, having already stated the actual problem with the hindering count, was not required to subject his client to multiple convictions in order to preserve the issue.

■ Since there was no evidence of force, intimidation, or deception, it is plain that double jeopardy considerations preclude retrial for witness tampering under b(3). We see, however, no impediment to reindictment and retrial on an a(3) charge.

The conviction appealed from is reversed.